Senior District Judge Alvin Garbus from the District of Maryland. He's a member of this panel on the cases being heard today. He also sat in a different panel yesterday. His appearance is part of a program, as some of you may know, whereby district judges, including senior district judges, have been invited for some of our argument sessions during each quarter, each month. The program began in September and will continue indefinitely, so we appreciate your assistance. We have on the list today a total of five cases, one of which is being submitted on the briefs without oral argument today, namely Appeal No. 06-3401, Phillips v. Merritt System Protection Board. On the four-case argument list will appear argument first in Appeal No. 06-7304, Alpough v. Department of Veterans Affairs. Mr. Hsu, good morning to you. Welcome and please proceed. Good morning. Thank you, Chief Judge Michel. I'm made pleased to court. What I'd like to do with the time allotted to me this morning is to just walk through the relevant statute and regulations and make some observations along the way. The statutory framework for the surviving spouse definition has been called a confusing taboo by the Veterans Court, and what I'd like to hopefully show the court today is that there is an internally consistent interpretation of both the statute and the regulations that gets us to the result that we urge the court to rule today. So you're not attacking the statute or the regulation, but you're attacking an interpretation of the regulation? Yes, Your Honor. We're attacking an interpretation of the statute and the regulation. And the interpretation being found precisely where? The interpretation in the Veterans Court's opinion, it would be found on the page in this case. In this case, it would be an interpretation of Section 101. What I'm trying to understand is that there's no document, I take it, in which the secretary or other official of the department has stated an interpretation of the statute or regulation in question. It's just the opinion in this very case by the Veterans Court judge that you say constitutes such an interpretation. Yes, Your Honor, but there is, of course, the interpretation of the agency as to the meaning of Section 101.3 in the pertinent regulations, which would be 3.50 and 3.53. Remember, you agreed with the statute, didn't you? Well, the statute doesn't define the key terms that we're concerned with today. The requirement of interest today in the statute is what's called the continuous abdication requirement. It's a requirement that a surviving spouse must have lived with the veteran from the date of marriage to the date of the veteran's death. And there's an exception. Is that a yes? Yes, Your Honor. So your theory is the statute is ambiguous under Chevron, the regulation? Yes, Your Honor, but also to apply the plain meaning to the key words procured by and without fault of the spouse. In particular, procured by, the words procured by the veteran. Can you, if the fault here in terms of adjudication was something said by the veterans court judge, can you direct us to the precise language that you regard as being the erroneous interpretation of the statute and or regulation? Yes, Your Honor. In the veterans court's opinion, at page four to five, the interpretation that we're complaining about is the statement, since the appellant has been- Where are you on page four? Your Honor, I'm on the bottom of page four, the second line from the bottom. Thank you. Since the appellant has explicitly conceded in her brief that the separation is by mutual consent without the fault of either party, she cannot prevail because the law and the regulation make an exception only for a separation caused by the veteran's misconduct. It is our position, Chief Judge Michel, that that's an erroneous interpretation of section 101.3, which clearly, as the words indicate, set out two different non-disqualifying separation scenarios. One is where the separation was due to the veteran's misconduct and without the fault of the spouse. The other scenario is where the separation was procured by the veteran and without the fault of the spouse. There are two non-disqualifying scenarios. So then are you objecting to the word at the top of page five only, saying that's an erroneous statement on behalf of the law, the use of the word only? Yes, Your Honor, we are. Okay. Now, is it possible that that is, if error, and it may be certainly not very precise or comprehensive, why would this be viewable as a harmless error or harmless, inaccurate statement of the law? Because, Your Honor, in the court below, the appellant urged the court to find that a separation by mutual consent without fault of the party qualified as a separation procured by the veteran without fault of the spouse under 101.3 and under the interpreting regulation, which is 3.53B. And what the Veterans Court has apparently done here is to not look at 3.53B, but instead focus on 3.53A, which talks about the fact that, well, a non-disqualifying separation is a two-part analysis. You have to, there can't just be, you can't just focus on the absence of fault of the spouse. You also have to focus on either the misconduct of the veteran or the fact that the separation was procured by the veteran. And so, in essence, what we're saying here, Your Honor, is that— Well, he quotes from Gregory on page 4. The language at the end of that block quote near the bottom of page 4 of my opinion was due to the misconduct of or procured by the veteran. You seem to be suggesting that because of the sentence ending at the top of page 5 and the use of the word only, that he was unaware of the two-part nature of the statute, the two-part nature of the regulation. But the language he quotes may suggest that he was perfectly aware of it and that the ensuing sentence that misstates the law was just a carelessly crafted sentence but not proof that he thought it was a one-dimensional test. Well, Your Honor, our reading of the Veterans Court's opinion is this. We argued that the court should focus on the separation by mutual consent, which we believe qualifies as a separation procured by the veteran without fault of the spouse. What the Veterans Court did in response was not to look at that, but rather to quote Gregory for the proposition that one cannot just focus on the absence of fault on the part of the spouse, but the opinion never addresses our argument, which is, well, what about a separation by mutual consent? Doesn't that qualify under the other part of the two-part test? I.e., doesn't that qualify as a separation procured by the veteran? Because of the language of the regulation. Yes, Your Honor. And also the plain meaning, I believe the secretary in his brief has given the court some dictionary definitions of what it means to procure, to bring about a cause to happen, which we would submit includes not just unilateral conduct by the veteran but also situations where the veteran and his or her spouse agree that they should separate. That's kind of a weak argument, isn't it, that the language of the statute is plain in your way? That seems to me to be kind of hard. Well, I think that it's plain only so far as the dictionary goes and that, of course, the court should take note of the agency's own interpretation of the statute in 3.53B. Do you seek a remand or what? If we were to be persuaded by you that there's sufficient reversible error here to justify a remand, we'd send it back to the Veterans Court and then, in your view, what should then happen? Well, the Veterans Court should then rule on the issue that was argued below, which is whether a separation by mutual consent can fall within the purview of Section 113 and Section 3.53B. And I would assume, at least for purposes of argument, that if this went back to Judge Lance, for example, that in a similar non-presidential one-judge opinion, he would say no. And he would write a couple sentences explaining it, and then there'd be a new appeal, and we'd be back here again. If his opinion, as he wrote it, as we have it, implicitly rejects your principal argument, why can't we simply decide whether that argument entitles your client to the relief sought, rather than having two more rounds of litigation, possibly just because of a carelessly written sentence in an opinion? I suppose, Chief Judge Mischel, that the court could do that here. As we've indicated in our briefs, we don't dispute the factual determinations by the court. The record is clear that even if you did, we are not allowed to review the record. It doesn't go anywhere if we're going to make that kind of argument. That's correct, Your Honor. If we look at the regulation, the regulation clearly says, number one, that it can be, under the procured by label, the separation by unusual consent will fit if, and then it's the if, and then it's kind of difficult to follow. The parties lived apart for purposes of convenience, health, business, or any other reason, which did not show an intent on the part of the surviving spouse to desert the veteran. I assume you're saying that in this case you fit in one of those other categories, and I guess we don't have the facts on the record to go into that, but if part of intent to desert, if that means intent to be separated from, which I guess it has to be, if you're talking about mutual consent, and then I would have to interpret the regs to say an intent of the surviving spouse not to intentionally live apart from the veteran. If that's the interpretation from desert the veteran, then in this case when she says, well, we did it because we just couldn't get along, I'm not sure how you would fit within the regulation. Well, so to answer your question, Jeff Harvis, we would interpret intent to desert to mean an intent to call the, to say that the marriage is over, that there's no desire to stay together any longer. Clearly 3.53b covers a lot of scenarios where parties can live apart for reasons other than to say that the marriage is over. Well, of course you're not saying the marriage is over or else they get a divorce, but in this case don't you have the rule in having said we just couldn't get along, which is a nice statement, but we don't intend to live together anymore. Well, but there was an agreement by the parties to do that. I think intent to desert implies the fault element of the test, which is that there was an act of desertion or an intent to desert. Why can't a consensual separation be viewed as a mutual desertion? I suppose. And therefore under the statute in the reg, even though you can say, well, he was deserting her as much as she was deserting him, the part that counts under the reg is that she's deserting him. QED, she must lose and not get the money. Well, I suppose it could, but clearly the agency didn't see it that way. It wouldn't have been helpful, actually, if you bothered to look at the dictionaries, because the dictionaries, including Black's Law, define desert as being without the consent of the other spouse. If you take that definition, desert, mutual separation, does not involve desertion that is implied by the spouse. That would be true, yes. And in this case, there are many scenarios under which the parties can mutually agree to live apart for some reason. The law does not require that married couples, you know, always maintain their affections for one another, or always find that it's convenient to live together. Aren't the examples listed in the reg of all ones, at least the ones I can recall that suggest that some external circumstance is more or less forcing the couple to live apart, to be separated, even though their loyalties or their emotional state would suggest that, but for those external circumstances, they would continue living together. They want to continue to live together. They are getting along well, etc. Whereas here, it seems very clear to me, maybe I'm making it simpler than it is, it seems very clear to me that these two people, by 1970, roundly disliked each other, didn't want to live together, didn't want to carry on an active marriage, and both couldn't wait to get the hell out of them. So it's hard to compare that characterization of the motivation of the couple with those examples in the regulation, dealing with what I'm calling extraneous circumstances, which might force people to live apart, in effect, against their will. Here, living apart was in accordance with the will of each. It seems very different. Your Honor, I'm out of time. May I answer your question? Yes, indeed. You may. Well, as the regulation says, it's a separation by mutual consent. So it means that the parties agree to live apart. And the examples, health, convenience, business, aren't limited. There's the catch-all phrase. Any other reason, as long as it's a reason... Doesn't the any other reason have to be any other reason of the same ilk as the examples listed above? Sort of a catch-all kind of thing, but still limited to the same type of reason. I would say no, Your Honor. It just has to be any other reason that doesn't show an intent on the part of the surviving spouse to desert. This unilateral act, as Judge Stein mentioned. All right. Thank you. We'll take two minutes back at rebuttal, even though time has expired. We'll hear from the Governor. Ms. Burke, good morning. Good morning, Your Honor. Welcome. Please proceed. May it please the Court. The Veterans Court judgment should be affirmed. According to Ms. Altho's view, any separated couple was... What we have here is we have this... Any other reason which does not show an intent on the part of the surviving spouse to desert the veteran. Now, look at Black's Law of Engineering. It says, in the family law, the fraud of the spousal desertion are listed by only one of those. It's lack of consent. Why shouldn't we meet this regulation that would not be the standard desertion definition in family law from Black's Law of Engineering, which requires a lack of consent? And if that's correct, isn't the veteran's claim about destruction of the right to life? Let me just make sure I understand your question. If desertion includes lack of consent, then, well, in this situation... Doesn't the veteran win? Or the widow win? I mean, does the veteran and the widow win? Well, no, Your Honor. Why not? Because there was consent. No. That is the point. It's not desertion. It's consensual. That's what the dictionary says. It is not desertion if it's consensual. So we have to guess whether there was desertion. No desertion if it's consensual. If there's no desertion, then mutual consent separation is okay. I understand. I apologize. First of all, it's helpful, and I apologize that we didn't do this in our brief, but it was unclear to us exactly where or exactly what provision Ms. Alko was relying on until the reply brief, in which she really focuses on 3.53b. But if you go back and you look at board decisions, which either postdate or predate this regulation, and there weren't really board decisions that predated the statute, but to the extent that there were pension decisions, it becomes clear that what desertion means is an intent to leave. And so the context that it normally comes from... Are you suggesting that in adopting the regulation that the Veterans Administration adopted the rationale of the board decision as opposed to the general definition? Well, I guess I would have to look at the definition of the Blacks Dictionary and figure out, you know, what date it, for example, was issued to try and figure out whether the concept of desertion is a more modern... This goes back edition after edition. That doesn't count. Well, one of the difficulties that I think we have in this case is the terminology for separations and divorces changes over time. So, for example, you have the concept of fault both in the statute and in the regulation. That is not the concept of fault that has developed since then. We're not talking about fault here. We're talking about operative legal word desertion. And if you're going to say that the Secretary's regulation necessarily embodied a special unconventional definition of desertion, then for at least one judge, you're going to have to show me some regulatory history or some definition in the reg itself that shows such a clear intent. Could I venture into this? Sure. If you have a regulation that has... The separation has to be by mutual consent and has to have no intention to desert, then if desert is giving the normal meaning that a judge proposes, perhaps the regulation has no meaning at all. Because if mutual consent necessarily excludes desertion, you don't need to find words. And it would be logical to say that in this context, using the word to desert has to mean something other than an absence of mutual consent, because if there's no mutual consent, you're not there in the first place. I don't know if that was clear enough, but I can understand that in this context that there can be two kinds of separations by mutual consent. One is we consent, but we really want to get back together if we can. Or at least the surviving spouse says, I want to get back together if we can. And another is we separate by mutual consent. The surviving spouse doesn't have any intention to get back together, even though both of those have mutual consent. I'm just wondering if that's a thing. Well, I think I understand your question. I feel what you're saying, and I think I might agree, that the phrase, for any other reason that does not show intent to desert, I don't know if I would call it meaningless, but it might not be necessary to understand the previous part of the regulation, which clearly says that if the separation was by mutual consent and the parties lived together for some other reason that had nothing to do with their incompatibility. I think that the add-on, or any other reason that does not show an intent to desert, is really just meant to define all of those other categories. Those categories are obviously not categories that would exist if one of the parties intended to leave the other party. What is desert? I don't have the Black's Dictionary definition in front of me, and apparently it has five provisions. But what desert means, in the way that the board has interpreted it, in these kinds of cases, means an intention to leave the other party. So, for example, in a situation where the parties are separated... What cases are those? I'm talking about board cases, which, if you look at them online, don't have any names. It's not under brief. You're depending on board opinions that are not provided in the appellate record in this case? Well, I'm talking about the interpretation of the Board of Veterans' Appeals, which... We don't defer to that. You do defer to that, absolutely. We defer to that interpretation of the regulation. To the agency's interpretation of its own regulation, absolutely. Are they interpreting the regulation? Every time they are applying this regulation to a particular set of facts. No, but have they interpreted the regulation? Have they said that the meaning of the word desert in the regulation is different from the normal meaning? And this is why we think it means this. Have they undertaken an analysis of the regulation? No, not in that particular way. But they have consistently found that... And the District of Columbia Circuit has also addressed the issue in a case called Carter. They've consistently found that deserting somebody merely shows an intent to leave. So, for example, if a wife is separated from her husband and not yet divorced and has a baby with another man, that is evidence of desertion. That is no longer the case. These are very, very old cases. But that is a particular example of a situation that would evidence desertion. Those aren't cited in your brief? No, but they're not really citable. I can certainly give you the website, but I can't give you the name of the particular case because the names are confidential. These are board decisions. Unpublished board decisions. Well, they're published without the identifying information. Are they considered to be precedential by the board? I don't know the answer to that. I would assume so, but I don't know the answer to that. But you're asking us to say every time the board has applied this regulation, even without any linguistic analysis in their opinion, they have done a construction of the words in the regulation. And therefore, it's an interpretation of the regulation embedded in an application of the regulation. That's correct, Your Honor. And this court in Smith found that to be perfectly appropriate as warranting deference. Well, I'm challenging the premise. It seems to me that applying a statute or a regulation to a particular set of established facts is different from interpreting the meaning of words and phrases in that statute or regulation. And therefore, if a board decision comes out with a result based on the facts through applying the statute, but never interprets the meaning of some word or phrase in the statute, then I don't agree with you that there's an interpretation. There's only an application. And therefore, the board decision is worthless for the purpose you're citing. So your question, I believe, is that if there's no actual explicit discussion, if we are interpreting this particular regulation and here's our interpretation, that there is no interpretation, I think I would disagree with that. Well, I understand you disagree with that, but what's your authority for saying that the application of a statute always involves, even if there's no discussion, an interpretation of the words and phrases in the statute? Well, we don't even have to go so far as to look at other board decisions. We can look at the board decision in this case, which, according to Smith, is enough of a pronouncement, or the briefs by the parties is enough of a pronouncement about the agency's interpretation of the regulation. On the other line, the briefs, Smith says explicitly that the litigating position doesn't count, doesn't it? I believe it says the opposite. It says the litigating position counts. And we're only talking about an interpretation of the agency's interpretation of a regulation, obviously not a statute, but yes. Where do the board in this case interpret the regulation? Okay. Well, first of all, we can start with on page 27 of the Joint Appendix. In the middle paragraph, the paragraph that begins with VA does not dispute. This is not an indirect answer to your question, but I just want to point out that the board specifically addressed the question of misconduct and whether misconduct had been alleged and noted that it hadn't been alleged. And this gets back to- Okay, but address my question. Where did they tell us what the meaning of the assertion was? Well, Your Honor, there's no specific discussion of the desertion question in this particular board decision because it wasn't raised to the board. No, but I thought you said that we can look at this board decision to find out how the board interpreted the regulation. Well, I- You seem to be saying that they didn't interpret it. What I meant was we can look to this particular board decision to see the interpretation of the regulations that were raised before it. So this board decision didn't interpret the desertion? No, but that's because it wasn't raised before it, which brings up an additional issue of why this question- or how this question can possibly be raised now when the board never addressed it because at the time that this issue was before the board, the question was whether the separation was a result of an illness. And Gazzalco seems to be conceding that that is no longer the case, that that is the decision that the Veterans Court was reviewing and that is the decision that the board was making. Is there any other board decision that specifically interprets desertion? Are you aware of it? In the way that Judge Michelle was suggesting, not that I'm aware of in an explicit way. And even if there were, what's the authority of saying that Chevron deference attaches to an individual board decision? Well, I don't think it would- I think it would be a little bit more than Chevron deference. I think that when you're interpreting- when the agency is interpreting its own regulation, just according to Smith, we're in a realm outside of- What I'm trying to get you to focus on is this distinction. If the secretary issues some proclamation that says, last year I issued regulation 101. In it are the following six words. I construe those six words to mean, and then he goes on and sets it forth in this proclamation. That would certainly be a case in which the agency, acting through the secretary, is interpreting its own regulations issued a year earlier. So if there had been some proclamation like that, that would make a big impression, at least on me. But I'm not familiar with the idea that any time the board issues a result, that that's the agency interpreting its own regulations in a way that would bind the courts. It would seem to me that would not be an agency interpretation. I'm not suggesting that the mere application of a set of facts to the regulation equals the agency's authoritative interpretation of its own regulation. What I'm suggesting is that if all of the board decisions apply this regulation in exactly the same way, then the meaning of the regulation becomes clear. That language or any other reason that does not show an intent to deserve really just modifies the previous part of the sentence. Meaning that the only way that a separation by mutual consent can get around the continuous cohabitation rule is if there's some reason that doesn't have anything to do with the parties wanting to leave each other as a matter of their relationship. Even if the board had interpreted this regulation the way you want it to be interpreted, which apparently they haven't done, wouldn't you still have a problem in the sense that the regulation seems to be clear on its face because the word deserve has a well-respected meaning. It's not an ambiguous term. Well, and obviously a little bit of a disadvantage because I don't have that definition in front of me, but the way that your Honor read the definition suggests to me that there are five requirements. And if one of them, and this is assuming that we agree, if one of them doesn't quite fit with the situation and if it's a disjunctive set of requirements, then obviously there's no problem. I don't think they're disjunctive. I think there's some good in what Glass is suggesting that desertion requires all five of these things. I don't think that works. Well, perhaps it would be more helpful, and I'm out of time, but if I could just make one last comment. Perhaps it would be more helpful. You'll be out of time, but we're out of questions. And if the court focuses on the expression intent to desert, obviously the question whether there has been a desertion is not at issue in this regulation. The question is whether there's a reason that shows intent to desert. And... If the definition of desertion gives five requirements and if you don't fulfill all of those requirements then you haven't deserted someone, then perhaps it would be more helpful to focus on the language of the regulation which only requires that you show, sorry, that you do not show an intent to desert. You don't have to desert. Whether you deserted or only harbored an intent to desert doesn't get around the problem. You still have to know what constitutes desertion. If I'm going to attempt to desert somebody, we'll never be able to answer the question of whether I had such an intent unless we know what it was. Intent to murder, intent to rob, intent to rape, intent to steal. You can't tell whether the intent is there unless you know what the act is that you're talking about. Are you saying, counsel, that if her feeling was even if he wants me to come back to live with him, I don't intend to come back with him, that would be an intent to desert? Yes. And we certainly have that in the record on page 84 of the Joint Dependents. We have Mazzocco saying, I don't think we're getting back together or something to that effect, which seems on its face to be a clear intent to desert for a husband. And I'm not really sure how that can be undermined by the black law definition of desertion because if you say, if you effectively say that you intend to desert someone, I'm not sure whether you have to fulfill all of the five requirements that would actually constitute a desertion. But I think it's more helpful to read the regulation as a whole and it says that if there's mutual consent and you have one of these kinds of convenient situations and you don't really want to leave your partner, then you are considered to be still continuously compacted. All right. Thank you. Mr. Sue, you have two minutes for rebuttal. Thank you, Chief Justice Schell. I'd just like to address the Court on this dialogue regarding the provision, health, convenience, business, and any other reason not showing an intent or part of a spouse to desert. It's our position that the regulation sets out a broad category of reasons, which are any reasons not showing an intent to desert and that health, convenience, and business are but examples within that larger set. And the key point, as I just said, is that there can't be a situation where the spouse is saying, I'm going to leave you, and the veteran says, no, no, please don't do that. There's got to be some mutual agreement. And it may be for external reasons. It may be for circumstances not under control by the party. Or it could be for a reason internal or private to the parties. And in Stilwell v. Brown, the Veterans Court said that Section 3.53b was intended to be used as a shield by the spouse, not as a sword against the spouse. And we would submit that that's the kind of interpretation that one must give to Section 3.53b. It's meant to be liberal. It's meant to be remedial. It's meant to allow the spouse to show that in cases where there's mutual consent for the separation, that there are good reasons why the parties would have lived apart. Well, I understand your position at bottom to be that it doesn't matter whether they had any reason, much less a good reason. As long as they both consent, then the survivor will get the money. Isn't that your core position? Except that in the fact-finding that goes on within the agency, that the agency must elicit some sort of reason from the spouse as to why the separation occurred. And the regulation says that the statements of the spouse will be deemed controlling, absent, contradictory evidence. I guess you would admit that in a situation where the spouse says, I can't stand it anymore. I'm leaving, whether you agree or not. And the veteran says, OK, under those circumstances, I'll agree to a separation. You wouldn't argue in those circumstances that there were survival rights, would you? I would agree with that. Yes, Your Honor. All right. We thank both counsel. We'll take the appeal letter in the last week. Thank you.